JOEL CARTER,

       Plaintiff,

vs.                                          CASE NO.  3:10-cv-22-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## <u>ORDER AND OPINION</u>

This matter is before the Court on Plaintiff's Complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB").  Plaintiff filed his Memorandum in Opposition to the Commissioner's Denial of Benefits (Doc. #25, Plaintiff's brief).  Plaintiff  filed a motion to remand due to new evidence (Doc. #23), which the Court took under advisement (Doc. #31). Defendant filed his Memorandum in Reply to Plaintiff's Motion to Remand Due to New Evidence and in Support of the Commissioner's Decision (Doc. #28, Defendant's brief).  The Commissioner has filed the transcript of the underlying administrative record and proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings.  Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would

not benefit the Court in making its determinations.  Accordingly, the instant matter has been decided on the written record.  For the reasons set out herein, the Commissioner's decision is **REVERSED and REMANDED.**

## I. Procedural History

On December 10, 1996, Plaintiff protectively filed an application for Disability Insurance Benefits alleging disability since June 30, 1995.  (Tr. 86-90).  His claim was denied initially and upon request for reconsideration.  (Tr. 76-80).  Plaintiff filed a request for a hearing by an administrative law judge ("ALJ"), which was held October 6, 1998, at which Plaintiff was represented by attorney J. Nickolas Alexander, Jr.  On July 8, 1999, the ALJ found Plaintiff not disabled and the Commissioner issued his Notice of Decision - Unfavorable.  (Tr. 20-34).  Plaintiff filed a request for review of the hearing decision/order and the Appeals Council denied review on January 20, 2001.  On October 24, 2001, this Court remanded the claim with instructions to consider the letter containing Dr. Michael Pruitt's October 8, 1998 opinion into the record and to consider and evaluate the opinion in conjunction with Dr. Pruitt's September 28, 1998 mental assessment.  (Tr. 690-91).

On January 22, 2002, the Appeals Council ("AC") vacated the Commissioner's decision and remanded the case to the ALJ for further proceedings.  (Tr. 697-98).  A second administrative hearing was held on May 28, 2002 in Jacksonville, Florida.  (Tr. 736).  On October 25, 2002, the ALJ issued an unfavorable decision.  (Tr. 733-47).  On December 20, 2002, Plaintiff again sought review by this Court.  (Case No. 02-cv-1154-J-21TEM).  As a transcript was unavailable because the tape of the administrative hearing was lost, this Court  remanded the case pursuant to sentence six of Section 205(g) of the Social Security

Act for the Commissioner to take further administrative action.  (Tr. 750-51).  The Court recommended a new ALJ be assigned.  (Tr. 750).

On May 6, 2004, the AC vacated the Commissioner's decision and remanded the case for a new hearing, with directions that the case be assigned to a new ALJ.  (Tr. 761).  A third administrative hearing was held on October 13, 2005 in Jacksonville, Florida.  (Tr. 841).  The ALJ issued an unfavorable decision on March 10, 2006.  (Tr. 837-57).  Plaintiff's request for AC review was denied on July 7, 2007.  (Tr. 861).  Plaintiff sought review by this court, which reversed and remanded the case to the Commissioner to reevaluate the opinion of Plaintiff's treating physician, Dr. Thomas Murray.  (Tr. 904).

On November 17, 2008, the AC vacated the Commissioner's decision and remanded the case to the ALJ for further proceedings consistent with this Court's order.  (Tr. 860).  A fourth administrative hearing was held on June 2, 2009 in Jacksonville, Florida.  (Tr. 675).  The ALJ issued an unfavorable decision on August 13, 2009.  (Tr. 672-88).  Plaintiff's request for AC review was denied on December 10, 2009.  (Tr. 665).  Plaintiff filed the instant action on January 8, 2010.  (Doc. #1).[1]

## II. Background Facts

### A. Summary of Evidence Before the ALJ

Plaintiff was born May 2, 1954.  (Tr. 685).  He was forty-one years old at the time his disability insured status expired on September 30, 1995, and was fifty-five years old at

---

[1] Plaintiff filed a new application for DIB and SSI benefits in June 2009, alleging disability as of June 1, 2008, from a back disorder and degenerative disc disease.  Plaintiff's DIB application was denied.  Plaintiff was found disabled for purposes of SSI and was subsequently awarded SSI benefits on November 24, 2009.  (Doc. #28, Defendant's brief, at 4).

the time of the hearing. He has a high school education and past relevant work as a garbage collector and floor waxer.

Plaintiff's medical history was summarized in this Court's previous order. (Case No. 3:02-cv-1154-TEM (Doc. # 30 at 4-8)). Following this court's earlier remand, additional evidence was obtained and is now part of the record.

### i. Letters from Dr. Michael Pruitt

The record now contains two letters from Dr. Michael Pruitt, Plaintiff's psychiatrist. The first letter is dated May 13, 2009. (Tr. 945). Dr. Pruitt noted Plaintiff suffered a back injury at work on March 9, 1992. *Id.* He had some initial improvement following treatment, but his condition subsequently deteriorated and he developed severe pain and limitations in his ability to function. *Id.* Dr. Pruitt stated Plaintiff's depression started a few months before the end of 1995 and consisted of "depressed affect, reduced sleep, reduced motivation and energy, reduced memory and concentration, irritability, social isolation and suicidal ideation." *Id.* Dr. Pruitt stated Plaintiff was unable to return to work after the injury because of his physical limitations and depression. *Id.* Plaintiff received treatment from his physician on and off from 1995 through 1998 with both psychotherapy and antidepressant medications, with minimal improvement. *Id.* In Dr. Pruitt's opinion, Plaintiff's psychiatric disability was a direct result of his chronic pain and physical limitations which resulted from his work injury in 1992. *Id.* Plaintiff's depression emerged following the injury because, after initial improvement, his back problems worsened and he was unable to cope with the pain and physical limitations, which brought on depression. *Id.*

The second letter is dated June 1, 2009. (Tr. 944). Dr. Pruitt referred to medical progress notes dated June 30, 1995 and August 16, 1995, where Dr. Murray indicated that

Plaintiff had a recurrence of physical limitations and chronic pain due to a relapse of his work related back injury problems. *Id.* In those notes, Dr. Murray indicated Plaintiff's affect was flat in June and in August, Plaintiff had progressed to being depressed with suicidal ideation, low energy levels and insomnia. *Id.* By the time Plaintiff visited Dr. Pruitt on December 21, 1995, his depression "had continued to progress and consisted of depressed affect, suicidal ideation, insomnia, low energy levels, reduced motivation, reduced memory and concentration, irritability, and social isolation." *Id.* Dr. Pruitt concluded, "It is now clear from the review of Dr. Murray's records in conjunction with the evaluation done by this physician that the depression that he experienced due to the relapse of his severe back problems had started at least by June 30, 1995, three months prior to September 30, 1995." *Id.*

### ii. Plaintiff's Testimony

At the hearing, Plaintiff testified he could not work during the period prior to September 30, 1995 because of his back problem, pain, swelling, breathing, and high blood pressure. (Tr. 1085). Plaintiff testified he was suffering from depression during that time and ended up in the hospital because he was suicidal. (Tr. 1089). Plaintiff testified Dr. Murray never released him to go back to full-time work. (Tr. 1090). He testified Dr. Murray gave him a back brace and prescribed him an orthopedic bed, chair and shoes. (Tr. 1091). He testified the medicine prescribed by Dr. Murray caused him to experience delusions, drowsiness, dizziness, visual hallucinations, and thoughts of suicide. (Tr. 1092). Plaintiff testified his mother and friend did his housecleaning, cooking, laundry and shopping because he could not walk or move from his pain. (Tr. 1092-93). Plaintiff stated his mother often helped him get dressed and change the bandage on his back. (Tr. 1093).

**B. Summary of the ALJ's Decision**

A plaintiff may be entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  First, if a claimant is working at a substantial gainful activity, he or she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then he or she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he or she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then he or she is disabled.  20 C.F.R. § 404.1520(f).  A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

---

[2] All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified.

In the instant case, at step one, the ALJ found Plaintiff had engaged in substantial gainful activity ("SGA") from February 6, 1995 through August 16, 1995, and was therefore engaged in SGA on his alleged onset date of June 30, 1995. (Tr. 677). At step two, the ALJ found Plaintiff suffered from the following severe impairments: lumbar disc disease without evidence of herniation, spinal stenosis, foraminal stenosis or radiculopathy, and mild depression. (Tr. 678). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P. (Tr. 21). At step four, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> [T]o lift/carry 20 pounds occasionally and 10 pounds or less more frequently; he can sit for six hours and stand and walk for six hours off and on; he can do no climbing of ladders, ropes or scaffolds; he can perform other postural tasks as explained in the body of this decision; he is restricted to performing simple repetitive one and two step job tasks and to contact with the general public, supervisors and co-workers for only up to one-third of the workday including telephone contact.

*Id.* The ALJ then found Plaintiff unable to perform his past relevant work. (Tr. 685). However, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ found Plaintiff was not under a disability at any time from June 30, 1995, the alleged onset sate, through September 30, 1995, the date last insured.[3]

---

[3] To be eligible for disability insurance benefits under Title II of the Social Security Act, Plaintiff must establish that his disability began before his insured status expired. 42 U.S.C. 423 (a) and (c); 20 C.F.R. 404.101, 404.130, 404.131; *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). The record establishes that Plaintiff's insured status expired on September 30, 1995. Therefore, Plaintiff must establish disability prior to that date.

### III.  Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's

decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## IV. Analysis

Plaintiff raises four arguments: (1) the ALJ failed to accord proper weight to the opinions of Plaintiff's treating psychiatrist, Michael Pruitt, M.D.; (2) the ALJ failed to allow thorough cross examination of the vocational expert; (3) the ALJ posed an inaccurate hypothetical question to the vocational expert; and (4) the ALJ failed to accord proper weight to Plaintiff's complaints of pain. Additionally, Plaintiff requests the Court remand the case to the Administrative Law Judge due to new evidence.

**A. Whether the ALJ failed to accord proper weight to the opinions of Plaintiff's treating psychiatrist, Michael Pruitt, M.D.**

Plaintiff argues the ALJ failed to accord proper weight to the opinions of Plaintiff's treating psychiatrist, Michael Pruitt, M.D. Plaintiff raised this same argument in his previous appeal. In the September 30, 2008 Order and Opinion, this Court determined the ALJ properly discounted Dr. Pruitt's retrospective opinion that Plaintiff was incapable of returning to work prior to his date last insured due to depression as the ALJ had explained that Dr. Pruitt's opinion was conclusory, not supported by clinical findings and observations, and inconsistent with his own statements regarding Plaintiff's capabilities. (Case No. 3:02-cv-01154-TEM, Doc. #30). Dr. Pruitt has since offered two letters of clarification concerning the basis of his psychiatric medical opinion. Plaintiff submitted these letters to the ALJ at the last hearing and contends the ALJ's refused to consider the correspondence from Dr. Pruitt and thus committed reversible error.[4] Plaintiff also contends there is no substantial medical evidence that contradicts the findings of Dr. Pruitt.

It is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is "good cause" to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is: (1) not bolstered by the evidence; (2) contrary to the evidence; or (3) inconsistent with the treating physician's

_____

[4] Plaintiff states, "In sum, the ALJ's refusal to even consider the correspondence from Dr. Murray constitutes reversible error." (Doc. #25-2 at 18). However, as Plaintiff's argument concerned the correspondence from Dr. Pruitt and repeatedly referred to Dr. Pruitt, the undersigned believes Plaintiff's reference to Dr. Murray was a clerical error.

own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583. "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x. 741, 743 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).[5]

In the instant case, the ALJ did consider the two letters from Dr. Pruitt, contrary to Plaintiff's assertion. The ALJ stated, "In deciding the claimant's residual functional capacity, the Administrative Law Judge considered the May 13, 2009 and June 1, 2009 letters signed by Dr. Michael Pruitt. No significant weight was attached to either letter for the same reasons that were described in the decision that was issued on March 10, 2006." (Tr. 683). The ALJ then went on to address each letter in turn. The ALJ found the May 13, 2009 letter was too vague to support a conclusion that the claimant was either disabled due to depression at any time prior to September 30, 1995 because Dr. Pruitt merely stated

---

[5] Unpublished opinions may be cited throughout this order as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Plaintiff's depression "started a few months before the end of 1995." (Tr. 684). Further, the ALJ found the letter was also too vague to establish that Plaintiff was suffering from mental limitations that precluded him from performing simple repetitive one and two step tasks and contact with the general public, supervisors and co-workers for up to one-third of the workday including telephone contact. *Id.* Regarding the June 1, 2009 letter, the ALJ found that although Dr. Pruitt referenced the period prior to the claimant's date last insured by identifying Dr. Murray's reports from June 1995 and August 1995, he did not identify evidence that corroborated his conclusion that the claimant was incapable of returning to work due to depression prior to his date last insured. *Id.*

In his June letter, Dr. Pruitt referred to medical progress notes dated June 30, 1995 and August 16, 1995, where Dr. Murray indicated Plaintiff's affect was flat in June and progressed to being depressed with suicidal ideation, low energy levels and insomnia in August. Dr. Pruitt concluded, "It is now clear from the review of Dr. Murray's records in conjunction with the evaluation done by this physician that the depression that he experienced due to the relapse of his severe back problems had started at least by June 30, 1995, three months prior to September 30, 1995." (Tr. 944).

The ALJ reviewed Dr. Murray's notes from June and August 1995 and determined Dr. Murray had diagnosed "reactive depression" but given no indication he believed Plaintiff was suffering from functional limitations as a result of any mental impairment. (Tr. 684). The ALJ noted Dr. Murray's only recommendations in August 1995 were a single point cane, weight loss, nutrition counseling, and a referral for hypertension management. *Id.* Therefore, the ALJ found Dr. Murray's notes to corroborate the diagnosis of depression, which the ALJ included as a severe impairment, but did not corroborate Dr. Pruitt's

conclusion that the claimant was incapable of working. *Id.* The ALJ also noted that Dr. Pruitt himself had recommended Plaintiff perform volunteer work in 1996 and noted he could return to work in 1997 as a janitor. *Id.*

Accordingly, the undersigned finds substantial evidence supports the ALJ's decision to discount Dr. Pruitt's retrospective opinion. "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight." *Carson*, 300 F. App'x. at 743 (citing *Moore*, 405 F.3d at 1212).

**B. Whether the ALJ failed to allow thorough cross examination of the vocational expert**

Plaintiff contends the ALJ repeatedly interrupted the flow of the cross examination of the VE conducted by Plaintiff's counsel. Plaintiff also contends the ALJ refused to permit Plaintiff's counsel to request the VE repeat information for the Cafeteria Worker position. Plaintiff asserts that such interruptions and refusal to allow further inquiry of the VE placed limitations on Plaintiff's right to cross examination that was prejudicial.

The right to cross-examine witnesses is fundamental to due process. *Marin v. Comm'r of Soc. Sec.*, 535 F.Supp.2d 1263, 1265 (M.D. Fla. 2008). *See also* 20 C.F.R. 404.950(e) (Under the relevant regulations, the ALJ may ask a witness any questions material to the issues and "shall allow the parties or their designated representative to do so."). However, in order to establish a due process violation, there "must be a showing of prejudice." *Gordon v. Astrue*, 249 Fed.Appx. 810, 813 (11th Cir. 2007) (quoting *Brown v.*

*Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). In *Marin*, the plaintiff's attorney attempted to cross-examine the VE regarding the factual basis of the statistics she testified about, and was limited to hypothetical questions by the ALJ. *Id.* at 1264. The court held the ALJ's decision to restrict cross-examination of the VE to hypothetical questions was arbitrary and prejudicial because the ALJ relied on the VE's testimony and the credibility of that testimony was untested. *Id.* at 1265. *See also Delker v. Comm'r of Soc. Sec.*, 658 F.Supp.2d 1340 (M.D. Fla. 2009) (finding prejudice where ALJ improperly rejected treating physician's opinions and denied plaintiff the ability to elicit testimony from the VE based on those opinions).

Plaintiff's attorney attempted to question the VE regarding whether his identification of jobs pursuant to the ALJ's hypothetical would be different if the claimant's ability to concentrate was "poor." (Tr. 1112). The ALJ interjected and requested Plaintiff's definition of "poor." *Id.* Plaintiff responded that it meant the hypothetical person's ability to concentrate was affected for up to one-third of the day. *Id.* The ALJ again interjected and asked how the person's ability to concentrate was specifically affected and instructed Plaintiff's counsel to clarify his question. *Id.* Plaintiff then asked the VE to provide the reasoning requirement for cafeteria attendant. (Tr. 1113). The VE responded that position carried a reasoning level two, which connotes the ability to "apply common sense understanding to carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations." *Id.* Plaintiff then asked, "So my question with regard to the cafeteria work that you identified and your reasoning definition attached to that is that – would your testimony change if the hypothetical claimant's ability to do that was impair for up to one-third of the day." *Id.* The

14

ALJ again interjected asking, "Again, how is it impaired?  I mean, these are unskilled jobs.  How is his ability to concentrate impaired?  Does he walk off the job?  What does he do?"  *Id.*  Plaintiff's counsel and the ALJ then went back and forth for a few minutes with the ALJ telling counsel to clarify his question and counsel informing the ALJ that he did not appreciate the "tenor and tone" of his voice.  (Tr. 1113-15).  Finally, the ALJ told Plaintiff to ask his question.  (Tr. 1115).  Plaintiff asked to VE,

> My question again is with regard to the definition of reasoning that you gave, sir, if you were to assume that the hypothetical claimant was not able to carry out those criteria contained in the reasoning definition for up to one-third of the day would that person still be able to perform the job of cafeteria attendant?

*Id.*  The VE answered the question and Plaintiff continued his cross-examination without further interruption from the ALJ.  (Tr. 1115-17).

The relevant portion of the hearing does reflect frequent interruption by the ALJ during Plaintiff's cross-examination of the VE.  However, such interruption was due to the ALJ repeatedly requesting Plaintiff to clarify his question.  Ultimately, Plaintiff was able to ask the VE his desired question and from that point continued his cross-examination without further interruption.  Therefore, Plaintiff has not established a showing of prejudice as Plaintiff's counsel was able to conduct a meaningful cross-examination of the VE.  *See Charles v. Astrue*, 291 Fed. App'x 552, 555 (5th Cir. 2008) ("Although the ALJ frequently intervened during Appellant's counsel's cross-examination of the medical and vocational experts, these interventions appear substantially justified. Furthermore, Appellant has failed to show that any interruptions caused him prejudice, as the ALJ's interruptions did not prevent Appellant's counsel from asking all his desired questions and making all his

relevant points.").

## C. Whether the ALJ posed an inaccurate hypothetical question to the vocational expert

Plaintiff contends the ALJ erred in failing to include Plaintiff's limitation in ambulation in the hypothetical posed to the VE, as the record is replete with indications that Plaintiff required the assistance of a cane, and argues, therefore, the light residual functional capacity inclusion in his hypothetical is not supported by the medical record.[6] Plaintiff also asserts the jobs identified by the VE exceed Plaintiff's reasoning, math, and language levels required in the performance of his past relevant work.

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Though the ALJ must include all of the Plaintiff's impairments in his hypothetical formulations, he is not required to include any limitations or allegations that are not supported by substantial evidence and/or were properly discounted. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617 (11th Cir. 1987). Therefore, the Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the hypotheticals, and if so, whether such failure constitutes grounds for reversal.

---

[6] Light work involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. 20 C.F.R. § 404.1567(b). A job in the light work category may still require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do substantially all of the aforementioned activities. *Id.*

Plaintiff is correct that the hypothetical posed by the ALJ does not include limitations in ambulation by specifying that Plaintiff requires the use of a cane. As stated above, the ALJ is not required to include any limitations or allegations that he properly rejected. However, in the instant case, the ALJ did not affirmatively reject Plaintiff's need for a cane. The ALJ failed to address Plaintiff's use of a cane in his opinion despite the fact that such use is mentioned several times throughout the record.

In the Physical Therapy Discharge Summary, completed by Anita Davis on April 22, 1994, Ms. Davis noted Plaintiff "continued to be dependent on his straight cane for assistive ambulation despite his ability to ambulate independently for short distances." (Tr. 546). The FCE evaluator also reported that Plaintiff utilized a straight cane to assist with ambulation and had a slight limp, although the evaluator noted Plaintiff "demonstrated ability to ambulate without assistance of a straight cane." (Tr. 547). On April 18, 1995, Dr. Murray noted Plaintiff "ambulates with a monocane with a near normal gait." (Tr. 474). On August 16, 1995, Dr. Murray prescribed a single point cane because Plaintiff had broken his and was using a stick. (Tr. 467). Dr. Murray noted Plaintiff's right side gives out without warning. *Id.* Dr. Murray reported Plaintiff had 3/5 strength in his extremities. *Id.* On September 13, 1995, Dr. Weiss examined Plaintiff and noted he "mobilizes with moderate difficulty and ambulates with an antalgic pattern on the right. The patient uses a cane for assistance." (Tr. 553). Although Dr. Hancock testified at the hearing that he could not find a rationale for Plaintiff needing a cane, such testimony was in response to his reading of the April 22, 1994 physical therapy discharge report and did not address Plaintiff's alleged use of a cane during the relevant time period. (Tr. 1023-24). Furthermore, the ALJ did not discuss this testimony in his opinion or provide it as a reason for rejecting the medical

necessity of Plaintiff's cane.

Because the ALJ did not affirmatively reject the need for a cane, the Court cannot be sure whether he intended to recognize it. The inclusion of this restriction could alter the outcome of this case, particularly in light of the fact that several of the positions identified by the VE involve long periods of standing and walking. Even if the ALJ meant to reject the medical necessity of Plaintiff's cane, he erred by failing to explain his reasons for doing so. *Drawdy v. Astrue*, No. 3:08-cv-209-J-HTS, 2008 WL 4937002 (M.D. Fla. Nov. 17, 2008). Therefore, this matter will be remanded with instructions for the ALJ to explicitly consider whether Plaintiff requires the assistance of a cane.

**D. Plaintiff's motion to remand due to new evidence**

Plaintiff requests the Court remand the case to the Administrative Law Judge due to new evidence. (Doc. #23). Plaintiff avers Dr. Murray recently submitted an affidavit "describing in detail his opinion relative to the Plaintiff's ability to perform substantial gainful activity in 1995." (Doc. #23 at 3). The affidavit is attached to Plaintiff's motion to remand.

New evidence submitted to the Court may only be considered to determine if remand is warranted under sentence six of 42 U.S.C. § 405(g). *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1267-68 (11th Cir. 2007); *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986). To satisfy the criteria for a remand under sentence six, *supra*, a plaintiff must establish that (1) the evidence is new and non-cumulative; (2) the evidence is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *Caulder*, 791 F.2d at 877.

Plaintiff contends the evidence is non-cumulative because it is not contained in the

18

record; it is material because it may warrant the ALJ to change his mind regarding Plaintiff's ability to perform SGA in 1995; and there is good cause for Plaintiff's failure to present this evidence to the ALJ because Plaintiff was unable to contact Dr. Murray and had to hire a private investigator to locate him in order to obtain the clarification affidavit.

Defendant argues Plaintiff has failed to show that the additional evidence is material because it cannot reasonably be expected to change the ALJ's decision regarding Plaintiff's condition on and before his date last insured. Defendant argues the new evidence provides no indication that Plaintiff was disabled before his DLI.

The Court finds the new evidence is non-cumulative and good cause exists for the failure to present this evidence earlier. Additionally, the Court finds this evidence is material because reasonable probability exists that it could change the outcome of this case. In his letter Dr. Murray discusses Plaintiff's credibility, the existence of non-malingering signs, Plaintiff's use of a cane, and his reasoning behind various reports that were discussed in the ALJ's opinion. Dr. Murray specifically references the relevant time period and his retrospective opinion thus relates back to the covered period.[7] This case was previously remanded when the Court found the ALJ had not properly discounted Dr. Murray's opinion because one of the primary reasons cited by the ALJ was not supported by the evidence of record. (Case No. 3:02-cv-01154-TEM, Doc. #30). The Court noted that Dr. Murray's final report to the Florida Worker's Compensation Board was difficult to

---

[7] Dr. Murray indicated he treated Plaintiff from 1993 through 1997, and met with him thirty-seven times during that period. Dr. Murray references various reports from 1992 through 1996, and specifically references the time period at issue several times. For example, he refers to his August 16, 1995 report where he prescribed Plaintiff a replacement cane with padded handles. Dr. Murray also refers to reports in March, April, June and July of 1995, as well as relevant reports following Plaintiff's DLI.

decipher but it did not appear to reflect that Plaintiff was released to full-time work, as the ALJ contended. *Id.* at 18. The Court noted the record clearly indicated that as of April 12, 1995 Dr. Murray had not released Plaintiff to full-time work status, as he continued to restrict Plaintiff to four hours of work each day. *Id.* at 19-20. As such, Dr. Murray's new letter is particularly material because it discusses Dr. Murray's reasoning and intentions in the worker's compensation report, as well as his reasoning for the part-time work restrictions. Furthermore, Dr. Murray's letter is material because it contains discussion of Plaintiff's use of a cane, which the ALJ failed to address in his decision.[8] As this case is already remanded for consideration of Plaintiff's use of a cane, Dr. Murray's letter should be given due consideration in evaluating his medical opinion.

**E. Whether the ALJ failed to accord proper weight to Plaintiff's complaints of pain**

Plaintiff argues that the ALJ failed to accord proper weight to Plaintiff's complaints of pain. Plaintiff raised this argument in his previous appeal. In the September 30, 2008 Order and Opinion, this Court determined the ALJ properly discounted Plaintiff's complaints of disabling pain by articulating three reasons for finding Plaintiff's subjective complaints not entirely credible. (Case No. 3:02-cv-01154-TEM, Doc. #30). In his decision in the instant case, the ALJ initially noted that the District Court had affirmed his decision to discredit Plaintiff's subjective complaints of pain. The ALJ then recounted the reasons previously provided and noted Dr. Hancock concluded there was no medical evidence to account for Plaintiff's pain allegations.

---

[8] For example, Dr. Murray stated the wear and tear on Plaintiff's cane reflected the genuineness of his pain complaints, and also noted Plaintiff was trained in how to use his cane properly.

While the Court previously affirmed the reasons provided by the ALJ, in light of the decision to remand the case for consideration of Plaintiff's use of a cane and Dr. Murray's letter, the Court finds it appropriate for Plaintiff's credibility to be re-evaluated. In particular, Dr. Murray's letter may shed some light on this issue, as he discusses the existence of non-malingering signs and why he found Plaintiff's pain perception to be genuine.

## V. Conclusion

For the foregoing reasons, the undersigned finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards. The decision of the Commissioner is hereby **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g). The case is **REMANDED** for additional proceedings consistent with this Order and Opinion.

On remand, the Commissioner should hold other proceedings as he deems necessary, but in any event should re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law, re-weigh and give appropriate weight to the opinion evidence, including Dr. Murray's newly submitted affidavit, re-evaluate Plaintiff's credibility, and determine whether and how Plaintiff's use of a cane affects his RFC.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips*, 357 F.3d at 1244.

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to

ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the Commissioner's final decision to award benefits. *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added).

This Order does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

**DONE AND ENTERED** at Jacksonville, Florida this 28th day of September, 2011.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
All Counsel of Record
Pro se parties, if any